RETAIL SHOE AND TEXTILE SALES-MEN'S UNION, LOCAL 410, RCIA, AFL–CIO, Plaintiff,

v.

SEARS, ROEBUCK & CO., a corporation, Defendant.

DEPARTMENT STORE EMPLOYEES UNION, LOCAL 1100, RCIA, AFL–CIO, Plaintiff,

v.

SEARS, ROEBUCK & CO., a corporation, Defendant.

Nos. 39221, 39222.

United States District Court
N. D. California, S. D.
July 29, 1960.

Carroll, Davis, Burdick & McDonough, San Francisco, Cal., for plaintiffs.

Severson, Zang, Werson, Berke & Larson, San Francisco, Cal., for defendant.

HARRIS, District Judge.

Plaintiff unions, in separate actions which have now been consolidated, filed their complaints and petitions on June 22, 1960, against defendant corporation. Since the pleadings are similar and the relief sought is identical, the court will treat the plaintiffs in the singular in considering the allegations and the disposition of the respective causes of action.

The complaint alleges that certain disputes have arisen between plaintiff and defendant in connection with the replacement, denial of employment, layoffs, discharges and termination of employment of specific employees who are members of plaintiff union. Such disputes create a conflict in alleged violation of Sections II, IV(h), X, XII, XXVI, and XXX of the collective bargaining agreements entered into between the parties. The complaint charges in detail that defendant violated the agreements by reason of discriminatory transfers, demotions and termination of employment of numerous members (in oral argument both sides referred to 144 employees who were displaced from their former positions by reason of defendant's action; defendant's closing brief, however, indicates 114).

Plaintiff in its petition seeks to compel arbitration of the disputes pursuant to the written contracts entered into with defendant company. The complaint alleges that plaintiff organization, acting in accordance with the Labor Management Relations Act of 1947, Section 301, 29 U.S.C.A. § 185, represented its members in negotiations with defendant whereby collective bargaining agreements were entered into October 2, 1959. The agreements, marked Exhibits A and B and attached to the complaint, were operative at the time of the dispute which has given rise to the present litigation. Under their terms the parties agreed to settle by arbitration all complaints and disputes arising under the general provisions. See specifically, Section XXVI which sets forth in detail the manner in which arbitration is to be conducted.

The chronology of events leading to the commencement of the present action is as follows:

On May 27, June 3 and June 8, 1960, plaintiff's representative wrote defendant and set forth the particular grievances which its members had against defendant. The details of these grievances are set forth in Exhibits C, D and E attached to the complaint. Plaintiff requested that the differences be submitted to arbitration pursuant to the collective bargaining agreement. On June 3, 1960, plaintiff's representative sent a telegram to defendant in which the deadline for meeting the terms of the agreement were referred to, as more particularly set forth in Exhibit F attached to the complaint. Defendant failed to respond to the communications and neglected to meet with the individuals whom plaintiff intended to have serve as its representatives on a Labor Relations Committee which was to have been created pursuant to the arbitration provisions in the agreement. Thus, plaintiff found itself unsuccessful in its efforts to arbitrate or initiate arbitration concerning the rights of its members, and now seeks a remedy in the summary proceeding.

In its prayer plaintiff asks that an order be made directing that arbitration proceed in the manner provided for in the agreements.

In the second cause of action plaintiff charges, in addition to the allegations previously set forth, that an independent union established a picket line at the defendant's several places of business after receiving authorization to do so from the San Francisco Labor Council. Plaintiff's members respected such picket line as authorized by Section XXVI of the collective bargaining agreements with defendant. When the pickets were withdrawn at the end of a two-week period, pursuant to a Superior Court order, plaintiff's members sought to return to their employment but were informed by defendant that the positions were no longer available. Plaintiff alleges that such deprivation of work constitutes a

violation of the collective bargaining agreements in the respects set forth above.

Plaintiff also charges that defendant discriminated against certain individual employees by transfers, demotions and other shifts contrary to Sections II and XII of the agreements. The differences between plaintiff's members and defendant, as alleged in the complaint appear to fall within the several provisions of the collective bargaining agreements. Plaintiff prays that the court direct defendant to utilize the arbitration procedure in the manner provided for in the agreements.

This court issued an order to show cause on June 23, 1960, ordering defendant to show why plaintiff's requested order should not be made. In response to such order to show cause defendant prepared a lengthy memorandum of points and authorities and moved the court for a dismissal of the petition on the ground that there is no arbitrable issue involved. In the alternative, defendant requested that the court define the issue and limit the boundaries of arbitration, should it deem that the complaint does allege an issue within the scope of the collective bargaining agreements. The parties argued the matter at great length on July 19, 1960, and also referred to certain affidavits filed by defendant.

The primary position taken by defendant in opposition to the prompt utilization of arbitration machinery is that the company should have an opportunity to file an answer, create issues and adduce evidence in support thereof before this court. In short, that a full-dress trial be conducted.

The simple answer to this contention is found in Textile Workers Union of America v. Lincoln Mills of Ala., 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972; United Steel Workers of America v. American Mfg. Co., 80 S.Ct. 1343, 4 L.Ed.2d 1403; and United Steel Workers v. Warrior and Gulf Navigation Co., 80 S.Ct. 1347, 4 L. Ed.2d 1409; which authorize the trial court under the circumstances disclosed in the case at bar to fashion decrees in equity under Section 301, although there is no specific machinery set forth for so doing.

The record will show that the majority of the 144 persons involved in the instant litigation through their union, refused to cross the picket line referred to above, and thus come within the purview of subdivision (b) of the collective bargaining agreement, Article XXVI. This having been conceded and established, the basic problem is whether the defendant may displace the employees, and having replaced them what, if any, rights they may have with regard to seniority and other benefits that flow after long tenure.

It is conceded by the parties that replacement may be made. Textile Workers Union of America v. Arista Mills Co., 4 Cir., 193 F.2d 529, 534; N. L. R. B. v. Cowles Publishing Co., 9 Cir., 214 F. 2d 708. However, it is equally clear that arbitrary and capricious conduct cannot be engaged in by the defendant, nor may the replacement thesis be used as a subterfuge in order to create reprisals as against otherwise innocent employees. See N. L. R. B. v. Rockaway News Co., 345 U.S. 71, 75, 73 S.Ct. 519, 522, 97 L. Ed. 832, in which the court, through Mr. Justice Jackson, stated: "Substantive rights and duties in the field of labor-management do not depend on verbal ritual reminiscent of medieval real property law."

The contention is also urged that a complaint having been filed with the NLRB this court must defer action. The evolution and advancement of the law has been compelling, as announced in 8 Labor Law Journal 676, "The Effect of Collective Bargaining Provisions on NLRB Action," and is reflected in the several cases setting forth that this court under the circumstances must not stand still and permit the collective bargaining agreements to be superseded by administrative proceedings. Ryan Aeronautical Co. v. International Union, etc., D.C., 179 F.Supp. 1, 4; Lodge No. 12, District No. 37, International Association of Ma-

chinists v. Cameron Iron Works, 5 Cir., 257 F.2d 467; Independent Petroleum Workers v. Esso Standard Oil Co., 3 Cir., 235 F.2d 401; International Union of Operating Engineers, etc., v. Gulf Oil Corp., 5 Cir., 262 F.2d 80. In Ryan Aeronautical Co. v. International Union, supra, 179 F.Supp. at page 4, the court collates the authorities and states:

"It is apparent that many breaches of labor contracts also constitute unfair labor practices, so that, if plaintiff's contention were adopted, it would virtually abrogate the arbitration provisions contained in a majority of the contracts. Thus, the most logical view is that where there is a contract violation which may also be said to be an unfair labor practice, and the matter is submitted to arbitration in compliance with a contract provision, that jurisdiction to decide the contractual dispute should be in the arbitrators, and the Courts should have the jurisdiction to determine the validity of the award. The above view is sustained by the 9th Circuit in the case of Plumbers, etc., Union, Local No. 598 v. Dillion, 255 F.2d 820 at page 823, where Judge Barnes stated: 'The breach of contract may, as here, also be the source of an unfair labor practice cognizable by the NLRB, but the District Court is not thereby deprived of jurisdiction over the private action for breach. Independent Petroleum Workers v. Esso Standard Oil Co., 3 Cir., 1956, 235 F.2d 401.' Also supporting is the 5th Circuit case of Lodge No. 12, Dist. No. 37, etc. v. Cameron, etc., 257 F.2d 467 at page 475, certiorari denied 358 U.S. 880, 79 S.Ct. 120, 3 L.Ed.2d 110, where the court said, '* * * Within the spirit of the Lincoln-Mills cases, (Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed. 2d 972) and consonant with other well-reasoned decisions, the fact that the conduct here involved may constitute an unfair labor practice will not prevent it from being also an arbitrable contract violation.'"

The more advanced and recent cases hold that this court is not foreclosed from applying the significant sections (II, IV(h), X, XII, XXVI) of the collective bargaining agreements in granting relief under the arbitration clause.

In finality, the defendant argues that this court, if it is prepared to order arbitration of the dispute, must delineate the precise issues to be determined. In short, that the court should limit the arbitrator's authority to finally resolve all matters and to fashion an appropriate remedy. In support of the contention that the province of the arbitrator should be limited and intruded upon, defendant cites Refinery Employees Union, etc., v. Continental Oil Co., 5 Cir., 268 F.2d 447. This, essentially, is an isolated case and nowhere is it followed in the more advanced thinking on arbitration, as is reflected in the latest Supreme Court decisions.

In Steelworkers v. Enterprise Wheel & Car Corp., 80 S.Ct. 1358, 1368, 4 L.Ed. 2d 1424, it was said:

"When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of the problem. This is especially true when it comes to formulating remedies. There is need for flexibility in meeting a wide variety of situations."

See also, Grunwald-Marx, Inc. v. Los Angeles Joint Board, 52 Cal.2d 568, at page 580, 343 P.2d 23.

The grievances asserted in the complaint are matters embraced and covered in the collective bargaining agreement and are arbitrable. The asserted arbitrary and discriminatory replacement, denial of employment, lay-offs, discharges, terminations and lockouts are within the ambit and terms of the collective bar-

gaining agreements and more particularly Sections II. IV(h), X, XII, XXVI and XXX.

Accordingly, it is ordered that plaintiff's petition that this court direct defendant to proceed forthwith to arbitration be, and the same hereby is, granted;

It is further ordered that defendant's motion to dismiss be, and the same hereby is, denied;

It is further ordered that defendant's motion to vacate the order to show cause be, and the same hereby is, denied.