INSURANCE AGENTS' INTERNA-
TIONAL UNION, A. F. of L.
v.
PRUDENTIAL INS. CO.
Civ. A. No. 13479.

United States District Court
E. D. Pennsylvania.

Aug. 6, 1954.

Edward Davis, Philadelphia, Pa., for plaintiff.

Rawle & Henderson, Philadelphia, Pa., for defendant.

FOLLMER, District Judge.

This is a suit under Section 301 of the Labor Management Relations Act of 1947, commonly called the Taft-Hartley Act, 61 Stat. 156, 29 U.S.C.A. § 185, to order defendant to proceed to an arbitration under the terms of a collective bargaining agreement in effect between the parties.

This Court has jurisdiction of the action under the provisions of Section 301 (a) of said Act.

The plaintiff in this case is a labor union, which is the exclusive representative for the purposes of collective bargaining of all District Agents employed by the defendant, The Prudential Insurance Company of America, in various districts throughout the United States, including Chester, Pennsylvania, where the plain-

tiff operates through its Local Union, Local No. 130.

Benjamin D. Merchant, an Insurance Agent employed by the defendant, was a member of Local No. 130, and was dismissed by the defendant on or about August 3, 1951. At the time of his dismissal there was in effect a collective bargaining agreement, which had been entered into on or about November 28, 1949, and which did not expire until December 1, 1951. The existence of the contract and the dismissal of Benjamin D. Merchant as indicated were admitted at the trial.

The chronology of events giving rise to the controversy is as follows:

(a) On July 25, 1951 notice was given to Benjamin D. Merchant, an agent of the defendant, that his services would be terminated on August 3, 1951.

(b) On July 26, 1951 Merchant in writing notified the defendant of the appointment of the Union to act for him, as provided in Section 6 of Article XXIV of the contract.

(c) On August 10, 1951 the Grievance Committee, in accordance with the grievance procedure provided in Section 3 of Article XXIV of the contract, filed its grievance requesting a conference in connection with the termination of the services of Mr. Merchant.

(d) On August 14, 1951 the Grievance Committee met with District Manager Mullen, who refused to reinstate the agent. This action was taken by the District Manager four days after the filing of the grievance and within the seven days within which he was required to take action in accordance with Section 5 of Article XXIV of the contract.

(e) On August 23, 1951 defendant received from the plaintiff a letter bearing date August 21, 1951, enclosed in an envelope postmarked Washington, D. C., and on which the stamped date of mailing was August 22, 1951. This letter stated that the Grievance Committee was dissatisfied with the decision of District Manager Mullen and requested plaintiff's reinstatement. Plaintiff and defendant agree that the letter may be considered as a request of the Union for a further conference.

(f) On August 31, 1951 the defendant replied to that letter, advising that the Union's letter expressing dissatisfaction with the review was mailed on August 22, 1951 and received on August 23, 1951, nine days after the review with the Grievance Committee. The defendant further advised that inasmuch as the notice was not received within seven days after such review as required under Section 5 of Article XXIV of the agreement, the matter was not subject to further review under the grievance procedure.

(g) On September 5, 1951 the plaintiff wrote to the defendant, contending that its letter dated August 21, 1951 and received by the defendant on August 23, 1951, constituted a notice in writing within seven days as contemplated by Section 5 of Article XXIV of the contract and demanding an arbitration under Article XXV of the agreement.

(h) On September 18, 1951 the defendant advised the plaintiff that the written notice was not given within the seven day period as required by Section 5 of Article XXIV and that the grievance was therefore not subject to further review under the grievance procedure and declined to accede to arbitration.

Article XXIV (page 18) of the collective bargaining agreement provides a procedure for the handling of grievances and for the processing and settlement of the same. In Section 3 of Article XXIV specific provision is made for a grievance which involves the termination of the services of an agent, stating that such a grievance shall be taken up directly with the manager of the district by the Grievance Committee. Section 5 of Article XXIV provides that the manager of the district shall review the grievance with the Grievance Committee and then "Within seven days after the grievance committee is informed of the result of any review with the manager of the district, the Union, if it desires, may give notice in writing to the president of the Employer of its dissatisfaction with the

result of such review, giving its reasons therefor, and the matter shall then be referred for conference to the president of the Employer, or at his election, his designees, and the president of the Union, or at his election, his designees." [1]

The question posed here is a narrow one, the answer to it a very difficult one.

Articles XXIV (Grievance Procedure) and XXV (Arbitration) provide, in my opinion, consecutive and not merely alternative rights. Article XXV reads, "The following procedure for arbitration is in addition to the grievance procedure provided for in Article XXIV * * *." The contract did not give an "either-or" choice. It would necessarily follow that one seeking the benefits provided by the contract would have to exhaust the remedies provided by Article XXIV before he could invoke the relief provided by Article XXV.

Plaintiff contends that under the circumstances defendant must proceed with arbitration and raise any procedural defense that it may have with the arbitrator. Defendant, on the other hand, mindful that the arbitration clause of the contract provides, inter alia, "and the decision of the majority, (of the arbitrators) * * * shall be final and binding on all parties hereto," with considerable logic insists upon a rigidly literal construction of the contract, i. e., (a) that notice was not given until the receipt of the writing; (b) that plaintiff failed to comply with the third step of the grievance procedure in that it did not give to defendant its notice of dissatisfaction with the result of the review by the District Manager until nine days after receipt of the said review when the contract requires it to be given within seven days after the said receipt; (c) that not having complied with the terms of the contract, plaintiff is not entitled to arbitration. It is further defendant's contention that it is the responsibility of the Court to critically examine the contract and determine

1. The pertinent portions of Article XXIV (Grievance Procedure) of the agreement are as follows:

"1. The purpose of this Article is to provide opportunity for the discussion of grievances and to establish procedures for the processing and settlement thereof.

* * * * * *

"3. Whenever the grievance committee believes that it has a justifiable grievance, it shall first discuss the grievance with the assistant district manager of the aggrieved Agent or, in his absence, with the manager of the district in an attempt to settle the grievance. The assistant district manager or, in his absence, the manager of the district, shall review the grievance not later than the second reporting day following its presentation.

"If such a grievance:

"(a) Involves the termination of the services and agreement of an Agent * * *;

* * * * * *

it shall be taken up directly with the manager of the district by the grievance committee.

"4. If the grievance committee is dissatisfied with the discussions with the assistant district manager required by Section 3, it may, within fourteen days thereafter, take the grievance up with the manager of the district.

"5. The manager of the district, within seven days after receipt of any such greivance, (sic) shall review the same with the grievance committee. Within seven days after the grievance committee is informed of the result of any review with the manager of the district, the Union, if it desires, may give notice in writing to the president of the Employer of its dissatisfaction with the result of such review, giving its reasons therefor, and the matter shall then be referred for conference to the president of the Employer, or at his election, his designees, and the president of the Union, or at his election, his designees. * * *"

Article XXV (Arbitration) of the agreement provides in part as follows:

"The following procedure for arbitration is in addition to the grievance procedure provided for in Article XXIV but shall be applicable only to questions of termination by the Employer of the services and agreement of any Agent, except a Temporary Agent.

"If the Union shall be dissatisfied with the result of a conference, as provided in Article XXIV, involving a termination subject to arbitration, such termination may be referred by the Union to a Board of Arbitrators not more than seven days after such conference. * * *"

872

whether under the circumstances the plaintiff is entitled to arbitration under the terms of the agreement.

The issue here does not involve the validity of the contract per se as its existence and the basic substantive arbitrable dispute revolving around the hiring and firing of Merchant are admitted, nor can it be disputed that such basic substantive dispute is arbitrable under Article XXV. Thus, this is an action brought under a Federal statute and involves the matter of compliance with grievance and arbitration clauses of a valid contract. The dispute here unquestionably involves substantive rights of the parties which are arbitrable. However, while plaintiff, on the one hand, insists that it complied with the time requirements of Article XXIV, defendant, on the other hand, insists that plaintiff's notice of dissatisfaction was two days late, an obviously procedural complaint.

 Since all of the moving factors in the case happened in Pennsylvania, questions involving compliance with the terms of the contract should be determined by the laws of Pennsylvania. Possibly this case presents the type of difficulty that Judge Wyzanski had in mind when in Textile Workers Union of America (CIO) v. American Thread Co., D.C. Mass., 113 F.Supp. 137, 141, he said, "only when the Supreme Court of the United States speaks shall we know finally whether federal courts acting under § 301 are to apply federal or local law to determine the *rights* of the parties."

Arbitration is here to stay, and particularly where the parties have elected to submit their differences to it, the courts should not by hair splitting decisions hamstring its operation.[2]

The law in Pennsylvania is clear. In Mack Manufacturing Corporation v. International Union, United Automobile, Aircraft and Agricultural Implement Workers of America, 368 Pa. 37, 43, 81 A.2d 562, 565, the Supreme Court quoted with approval the language of the court below, as follows:

" 'We assume that the arbitrator is honest, unbiased, intelligent, informed and courageous and that he will not hesitate to disallow Defendants' Grievance A–575 if he finds that Defendants by inaction have forfeited their right to prosecute it. The grievance, however, is one contemplated by the agreement between the parties and therefore it is for the arbitrator to determine not only the substantive rights of the parties, but compliance with the proper procedural steps as well, since the procedure is also fixed by the agreement and there is a dispute over the interpretation of the agreement in that respect.' "

In the instant case, of course, the question involves the alleged inaction of the plaintiff.

For the reasons stated, I am of the opinion that the matters herein involved should be submitted to arbitration and that plaintiff's prayer should be granted. An appropriate order may be submitted.

---

2. Donahue v. Susquehanna Collieries Co., 3 Cir., 138 F.2d 3, 5, 149 A.L.R. 271.